UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**United States of America**

   v.                                      Case No. 16-cr-162-12-PB
                                            Opinion No. 2018 DNH 086

**Alfredo Gonzalez**


**MEMORANDUM AND ORDER**

A New Hampshire jury convicted Alfredo Gonzalez of conspiracy to distribute heroin. Although the court was not aware of it at the time, one of the jurors who participated in Gonzalez's trial was not a New Hampshire resident. Gonzalez argues in a motion for new trial that the court's failure to provide him with a jury consisting only of New Hampshire residents violated his rights under both the Jury Selection and Service Act, 28 U.S.C. § 1861, et seq., and the Sixth Amendment.

## I. BACKGROUND[1]

### A. The Juror

Jonathan Hatch was 26 years old when he was selected to serve as a juror on the Gonzalez case. He grew up in Derry, New

---

[1] The background facts are based on factual findings I made following an evidentiary hearing on Gonzalez's motion for new trial. Except where I have noted otherwise, the background facts are undisputed.

Hampshire, where he lived with his parents until he left to attend graduate school in 2013.  Thereafter, except for a brief period in 2016, when Hatch moved back in with his parents, he lived at several different addresses in Massachusetts.  In 2016, Hatch completed graduate school and took a job working for the Boston School System.

Hatch's parents sold their home in the summer of 2017.  At approximately the same time, Hatch's sister purchased a condominium in Derry.  After Hatch's sister purchased her condominium, Hatch shifted his mailing address from his parents' home to his sister's condominium.  He continues to receive his mail at that address.  Hatch also is registered to vote in New Hampshire, has a New Hampshire driver's license, and registers his car here.

**B.   The Jury Selection Process**

The court has adopted a Juror Selection Plan that requires the clerk to prepare a "Qualified Jury Wheel" by randomly selecting names from a "Master Jury Wheel."  Each prospective juror selected from the Master Jury Wheel is instructed to complete a "Juror Selection Questionnaire."  The electronic version of the questionnaire provides a "permanent address" for each juror and asks "[a]re your name and permanent address correct as displayed?  If not, please enter any corrections."

Jurors are also asked a series of questions, including "[h]as your primary residence for the past year been in New Hampshire?" and "[h]as your primary residence for the past year been [in the county of the juror's listed permanent address]?" Any juror who answers "no" to either question is instructed to list the "name of the county and/or state of your primary residence during the past year and include dates."

Jury panels are randomly drawn from the Qualified Juror Wheel. Jurors selected to participate on a panel are instructed to complete both a "Juror Information Form" and a "Supplemental Attorney Questionnaire." The Juror Information Form asks each juror to confirm their "permanent address." Among the additional questions asked are "[h]ow long have you lived in New Hampshire?" and "[h]ow long have you lived in [the county listed by the juror as his permanent address]?"

The Supplemental Attorney Questionnaire asks each juror: "Please list (a) the city/town and county of your current residence; (b) whether you own or rent; and (c) how long you have lived there in years/months." Jurors are also asked "[w]here did you live prior to this address? Please list (a) the city/town; (b) the county and state; and (c) [h]ow long you lived at your prior address in years/months."

Hatch's name was drawn from the Master Jury Wheel and he

was instructed to complete a Qualified Juror Questionnaire in June 2017. The electronic version of the Questionnaire, which Hatch chose to complete, listed Hatch's parents' former home address as his "permanent address," but Hatch changed his address to the address of his sister's condominium. Hatch answered "no" to the questions asking if he had been a resident of New Hampshire and Rockingham County for the past year and Hatch responded "Massachusetts, Norfolk County" when prompted to disclose his state and county of residence. Hatch also added "I have been living in Massachusetts for work." Based on Hatch's answers to these questions, he should have been disqualified from jury service, but, for reasons that are not disclosed in the record, he was deemed qualified and his name was added to the Qualified Juror Wheel.

Hatch was summoned to serve on the Gonzalez jury panel on November 7, 2017. At that time, he completed both a Juror Information Questionnaire and a Supplemental Attorney Questionnaire. Hatch did not change his "permanent address" on the Juror Information Questionnaire and he stated that he had lived in New Hampshire for 22 years and in Rockingham County for 21 years. When responding to the Supplemental Attorney Questionnaire, Hatch stated that the city and town of his "current residence" was "Jamaica Plain, Boston (3 months)." He

answered "Quincy, Massachusetts (1 year)" to the question asking for his prior address. Hatch's responses to the Supplemental Attorney Questionnaire should have disqualified him from jury service.

Information drawn from jurors' responses to the Juror Information Form and the Supplemental Attorney Questionnaire are used to produce two documents that are provided to counsel to assist them in the jury selection process. The first is a "Jury Selection List." The Jury Selection List is a summary document that provides each juror's number, name, age, "City & State," occupation, marital status, and spouse's occupation. The "City & State" provided for each juror is taken from the "permanent address" listed by the juror on the Juror Information Form. The second document is a printout of each juror's responses to the Supplemental Attorney Questionnaire. As I have explained, Hatch's answers to the Supplemental Attorney Questionnaire clearly stated that his current residence was "Jamaica Plain, Boston (3 months)" and that his prior address was "Quincy, Massachusetts (1 year)."

On the morning of jury selection, Hatch approached a member of the court's jury staff and stated that he "kind of lives in New Hampshire and kind of not." He also explained that he votes in New Hampshire and he has a New Hampshire driver's license.

He may also have said that he registers his car in the state. The staff member instructed Hatch that he should raise the issue with the judge during jury selection if his name was called. When Hatch later reported to the Jury Administrator for the selection of the Gonzalez jury, he told her that he was "all set" with what he had been talking to the staff member about and he also stated "I am keeping my New Hampshire residence." The Jury Administrator did not instruct Hatch to take any additional action with respect to the residency issue.[2]

Although counsel were provided with Hatch's responses to the Supplemental Attorney Questionnaire, which should have alerted them to the residency issue, neither party raised the issue with the court during the jury selection process. Nor did Hatch. As a result, Hatch was seated as a member of the Gonzalez jury without objection from either side. Defense counsel later explained that he did not become aware of the residency issue during the jury selection process because he

---

[2] The facts in this paragraph are drawn from a memorandum prepared by the Deputy Clerk concerning her investigation of the issue. Although Hatch has a different recollection of his conversation with the Jury Administrator and her assistant, and I have no reason to doubt Hatch's testimony on this point, I have adopted the version of these events depicted in the Deputy Clerk's memorandum for purposes of analysis because the Jury Administrator was not available to testify and Gonzalez's counsel argues that the Deputy Clerk's version is more favorable to Gonzalez.

6

relied exclusively on the Jury Selection List, which identified Hatch's "City & State" as Derry, New Hampshire.

Hatch stayed with his sister in Derry for the duration of the trial.  At one point, he parked his car in a parking spot reserved for residents of her condominium and his car was towed. Shortly after the trial ended, Hatch contacted a member of the clerk's office, explained that his car had been towed from his sister's condominium during the trial, and asked if the court would pay the towing fee.  At some point after Hatch made his request, the Deputy Clerk learned of a potential issue regarding Hatch's residency status and notified me.  I directed her to prepare a memorandum of her findings and provide the memorandum to counsel.  Gonzalez responded by filing his Motion for New Trial (Doc. No. 237).

## II.  STANDARD OF REVIEW

Rule 33 of the Federal Rules of Criminal Procedure authorizes a court to grant a new trial on a defendant's motion "if the interest of justice so requires."  New trial motions filed more than 14 days after a jury verdict is returned, as is the case here, must be based on newly discovered evidence.  See Fed. R. Crim. P. 33(b)(2) ("[a]ny motion for new trial grounded on any reason other than newly discovered evidence must be filed

within 14 days after the verdict or finding of guilty"). To obtain a new trial based on newly discovered evidence, a defendant ordinarily must prove: "(1) the newly discovered evidence was unknown or unavailable at the time of trial; (2) the defendant was duly diligent in trying to discover it; (3) the evidence was material; and (4) the evidence was such that it would probably result in an acquittal upon retrial." United State v. Desir, 273 F.3d 39, 42 (1st Cir. 2001).[3]

### III. ANALYSIS

Gonzalez grounds his motion on both the Jury Selection and Service Act ("Jury Selection Act" or "Act") and the Sixth Amendment. I address his argument under each provision in turn.

**A. Jury Selection Act**

The Jury Selection Act provides that a person is ineligible to serve on a federal jury unless, among other things, he "has

---

[3] The Court of Appeals has not determined whether a motion for new trial based upon newly discovered evidence of a juror's nonresidency status can be granted if the defendant cannot prove that an acquittal would probably result on retrial. In the present case, although the government produced substantial evidence at trial to support the guilty verdict, and an acquittal on retrial would be unlikely, I need not determine whether Gonzalez's motion should be denied on this basis because I determine he is not entitled to a new trial for reasons that are unrelated to the strength of the government's evidence against him.

resided for a period of one year within the judicial district."
28 U.S.C. § 1865(b)(1). A defendant must present any argument
that a juror is ineligible to serve under the Act "before the
voir dire examination begins, or within seven days after the
defendant discovered or could have discovered, by the exercise
of diligence, the grounds [for the challenge] . . . ." 28
U.S.C. § 1867(a). This process is "the exclusive means" by
which a defendant can challenge a jury on the ground that it was
not selected in the manner required by the Act. 28 U.S.C. §
1867(e).

In light of the Jury Selection Act's plain language, the
First Circuit has refused to adopt a per se rule that a new
trial is required whenever an ineligible juror is seated.
United States v. Uribe, 890 F.2d 554, 562 n.7 (1st Cir. 1989).
Instead, to succeed on a claim for a new trial based on a
violation of the Act, a defendant must both present his
challenge within the time period specified in the Act and prove
that the improperly seated juror was biased against the
defendant. See id. at 561-62; see also United States v. Cepeda
Peres, 577 F.2d 754, 759 (1st Cir. 1978). Gonzalez cannot
satisfy either requirement.

As a preliminary matter, Gonzalez is in no position to
claim that he satisfied the Jury Selection Act's timeliness

9

requirement because he failed to challenge Hatch's eligibility during the voir dire process, even though Hatch had disclosed the fact that he was not a New Hampshire resident in his answers to the Supplemental Attorney Questionnaire that were provided to Gonzalez before the jury was selected.

Gonzalez nevertheless defends his failure to challenge Hatch's eligibility during the voir dire process by claiming that he was misled by the Jury Selection List, which identified Hatch's "City & State" as "Derry, New Hampshire." Although I can understand how Gonzalez may have incorrectly concluded from the Jury Selection List alone that Hatch had met the Jury Selection Act's residency requirement, I cannot excuse his failure to review the Supplemental Attorney Questionnaire, which would have clearly revealed the fact that Hatch was ineligible to serve. The Jury Selection List reported the city and state of Hatch's "permanent address" rather than the city and state of his residence. Although Gonzalez had no way to know this from the Jury Selection List alone, the list did not provide Gonzalez with sufficient information to determine whether Hatch had met the Act's residency requirement because the List does not reveal whether Hatch had been a resident of the district for at least a year, as the Act requires. Diligence required Gonzalez to review the Supplemental Attorney Questionnaire during the voir

dire process if a juror's residence was an important factor to Gonzalez when selecting his jury.  If he had reviewed Hatch's answers to the Questionnaire, he would have had all of the information he needed to challenge Hatch's eligibility to serve.  His failure to raise his challenge within the time period specified in the Act thus bars him from raising the issue now.

More fundamentally, Gonzalez's bid for a new trial based on a violation of the Jury Selection Act could not possibly succeed even if his failure to raise his challenge to Hatch's eligibility earlier could somehow be excused.  To succeed with his claim, Gonzalez must also prove that Hatch was biased against him.  As the court explained in Uribe, "[t]he fact that a juror technically should have been disqualified, and was not, does not automatically require a new trial.  Rather, even if the problem had been unknowable at an earlier date, [the defendant] would still have to shoulder the burden of establishing harm." 890 F.2d at 562.  In this context, the harm the court was referring to is juror bias.  See id.

In Sampson v United States, 724 F.3d 150 (1st Cir. 2013), the First Circuit addressed the issue of juror bias when examining a claim that a new trial was warranted because a juror

had been dishonest during the voir dire process.[4]  When discussing juror bias in that context, the court explained

> [a]ny inquiry into potential bias in the event of
> juror dishonesty must be both context specific and
> fact specific.  The outcome of the inquiry depends on
> whether a reasonable judge, armed with the information
> that the dishonest juror failed to disclose and the
> reason behind the juror's dishonesty, would conclude
> under the totality of the circumstances that the juror
> lacked the capacity and the will to decide the case
> based on the evidence (and that, therefore, a valid
> basis for excusal for cause existed).

Id. at 165-66.  I apply the same test in examining Gonzalez's challenge to Hatch's impartiality.

This is not a case in which the evidence suggests that a juror intentionally provided false information to the court in an effort to lie his way onto the jury.  Nor am I aware of any other reason to question Hatch's impartiality.  Gonzalez argues that the fact that Hatch registers his car in New Hampshire even though he is not a New Hampshire resident somehow makes Hatch biased against him, but the reasoning underlying his conclusory argument is not spelled out.  Because Gonzalez cannot demonstrate that Hatch was biased against him, he is not

---

[4] A claim for a new trial based on dishonesty by a juror during the voir dire process is subject to the test announced in McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548 (1984). Gonzalez does not make a claim under McDonough and any such claim would fail because Gonzalez was not dishonest with the court during the voir dire process.

entitled to a new trial based on his claim under the Jury Selection Act.

**B.    Sixth Amendment**

The Sixth Amendment provides in pertinent part that an accused in federal court has a right to a trial "by an impartial jury of the State and district wherein the crime shall have been committed . . . ." U.S. CONST. amend. VI.  Gonzalez argues that this provision gives him a constitutional right to be tried by a jury made up entirely of New Hampshire residents.  Assuming without deciding that the Sixth Amendment gives Gonzalez this right, I nevertheless reject his argument for the same reasons that I rejected his claim under the Jury Selection Act.

Although the First Circuit has yet to address this specific issue, the Second Circuit was called upon to analyze a Sixth Amendment challenge based on a juror's non-resident status in [United States v. Novod, 923 F.2d 970, 978 (2nd Cir. 1991)].  In that case, one of the jurors was a resident of the state, but not the district in which the crime had been committed.  Defense counsel did not challenge the juror's eligibility to sit until after a guilty verdict had been returned even though he had good grounds to know of the residency issue before the jury began its deliberations.  In rejecting the defendant's Sixth Amendment challenge based on the juror's residency status, the court

concluded that absent some "showing of prejudice, the failure of Novod's counsel to recognize the residence issue and make a timely objection prevents Novod from raising the issue after trial and a jury verdict." Id. at 978.

Gonzalez has failed to present a persuasive argument as to why a different result is warranted in this case. Accordingly, I reject Gonzalez's Sixth Amendment challenge for the same reasons that I am unpersuaded by his challenge under the Jury Selection Act.

## IV. CONCLUSION

For the aforementioned reasons, I deny Gonzalez's motion for a new trial (Doc. No. 237).

SO ORDERED.

/s/ Paul Barbadoro
Paul Barbadoro
United States District Judge

April 24, 2018

cc: Donald A. Feith, Esq.
    Georgiana L. Konesky, Esq.
    Scott F. Gleason, Esq.
    Thomas J. Gleason, Esq.